# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**BENJAMIN NEIL LAMBERT**                                                      **PETITIONER**

### CASE NO. 4:20-CV-397-BRW-BD

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                             **RESPONDENT**

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections:

This Recommendation for dismissal has been sent to Judge Billy Roy Wilson. Any party to this suit may file objections if they disagree with the findings or conclusions set out in the Recommendation. To be considered, objections must be filed within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record.

### II.  Background:

The State charged Petitioner Benjamin Neil Lambert in Montgomery County Circuit Court, Case No. 49CR-18-20, with one count of breaking-or-entering, two counts of theft of property, and two counts of residential burglary. (Doc. No. 9-2) The criminal information notified Mr. Lambert that, for each count, the State considered Mr. Lambert subject to an extended term of imprisonment without eligibility for parole or community

correction transfer, because of his status as a habitual offender under Arkansas Code Annotated 5-4-501(d)(1). (Doc. No. 9-2 at pp. 1-2)

Mr. Lambert entered a negotiated plea of guilty in Case No. 49CR-18-20 and, on the same day, he also entered a negotiated plea of guilty to charges in Montgomery County Circuit Court Case No. 49CR-18-17. (Doc. Nos. 1 at pp. 19-34 and 9-3) See also Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *State v. Lambert*, 49CR-18-20, Plea Statement (March 15, 2019). In exchange for the guilty pleas, the State agreed to *nolle pros* additional charges in Case No. 49CR-18-17 and in Montgomery County Circuit Court, Case No. 49-CR-18-80. (Doc. No. 9-3 at p. 8) Additionally, the State agreed to recommend a total sentence of 15 years in the ADC with suspended imposition of sentence for an additional 15 years, the minimum sentence for Mr. Lambert's residential-burglary charges. See Ark. Code Ann. §§ 5-39-201(a)(2) (categorizing burglary as a Class b felony) and 5-4-501(d)(1)(C) (mandating an extended term of imprisonment of 30 to 60 years for a Class B felony).

The circuit court accepted the State's recommended sentence and sentenced Mr. Lambert on March 16, 2019, with all sentences to run concurrently, as follows:

| Offense 1 | 49CR-18-17 | Simultaneous possession of drugs and firearms as a habitual offender under Ark. Code Ann. 5-4-501(b) | *Nolle Prossed* |
|---|---|---|---|
| Offense 2 | 49CR-18-17 | Possession of Methamphetamine as a habitual offender under Ark. Code Ann. 5-4-501(b) | 6 years |

| | | | |
|---|---|---|---|
| Offense 3 | 49CR-18-17 | Possession of Drug Paraphernalia as a habitual offender under Ark. Code Ann. 5-4-501(b) | 6 years |
| Offense 4 | 49CR-18-17 | Possession of a Firearm by Certain Person as a habitual offender under Ark. Code Ann. 5-4-501(b) | 4 years |
| Offense 5 | 49CR-18-20 | Residential Burglary as a habitual offender under Ark. Code Ann. 5-4-501(b) | 15 years |
| Offense 6 | 49CR-18-20 | Breaking or Entering as a habitual offender under Ark. Code Ann. 5-4-501(b) | 6 years |
| Offense 7 | 49CR-18-20 | Residential Burglary as a habitual offender under Ark. Code Ann. 5-4-501(b) | 15 years |
| Offense 8 | 49CR-18-20 | Theft of Property as a habitual offender under Ark. Code Ann. 5-4-501(b) | 4 years |
| Offense 9 | 49CR-18-20 | Theft of Property as a habitual offender under Ark. Code Ann. 5-4-501(b) | 4 years |
| Offense 10 | 49CR-18-80 | Possession of Drug Paraphernalia as a habitual offender under Ark. Code Ann. 5-4-501(b) | *Nolle Prossed* |
| Offense 11 | 49CR-18-80 | Fleeing | *Nolle Prossed* |

(Doc. Nos. 1 at 19-26 and 9-3 at p. 9)

On April 16, 2019, the circuit court entered an amended sentencing order that corrected offenses five and seven (the two residential burglary charges) to reflect that Mr.

3

Lambert was sentenced as a habitual offender under Arkansas Code Annotated 5-4-501*(d)* instead of 501*(b)*. (Doc. No. 1 at pp. 27-34)

By pleading guilty, Mr. Lambert waived his right to file a direct appeal. See Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *State v. Lambert*, 49CR-18-20, Plea Statement at p. 2 (March 15, 2019). Mr. Lambert did not file a petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37.1. (Doc. No. 1 at p. 3)

In his federal habeas petition, Mr. Lambert claims that he was "consistently told by counsel, both prior to entering a guilty plea and for months thereafter, that he would *not* be required to serve 100% of *any* of the sentences imposed." He states that he did not know, until September 2019, when he received written notice from the ADC, that he would be required to serve 100 percent of the 15-year sentence for the two residential burglary convictions. (Doc. No. 1 at pp. 4, 37-38)

Mr. Lambert raises two claims in his petition. First, he claims that his sentences for residential burglary violate the *ex post facto* and equal protection clauses of the United States Constitution. (Doc. No. 1 at pp. 4- 14) Second, he claims that his counsel was ineffective for misinforming him about his parole eligibility during plea negotiations and for failing to object to the amended sentencing order. (Doc. No. 1 at pp. 14-17)

Director Payne urges the Court to dismiss Mr. Lambert's *ex post facto* and equal protection claims because he failed to exhaust his state remedies. Alternatively, the Director argues that the claims lack merit. (Doc. No. 9 at pp. 6-9) Director Payne also

argues that Mr. Lambert procedurally defaulted his ineffective-assistance claims and, alternatively, that those claims also lack merit. (Doc. No. 9 at pp. 9-14)

In his reply, Mr. Lambert argues that he did exhaust his *ex post facto* and equal protection claims and, alternatively, that the Court should stay this case to allow him to exhaust his claims in state court. He also argues that cause and prejudice excuse his procedural default of his ineffective-assistance-of-counsel claims. (Doc. No. 15)

### III. Discussion:

#### A. *Ex Post Facto* and Equal Protection Claims

Mr. Lambert claims that his sentences for residential burglary violate the *ex post facto* and equal protection clauses of the United States Constitution because the state is applying Arkansas Code Annotated §§ 5-4-501(d) and 16-93-609 to give him a status of "no parole at all." (Doc. No. 1 at p. 7)

As Director Payne correctly notes, however, Arkansas Code Annotated § 5-4-501 controls Mr. Lambert's sentence as a habitual offender and, thus, his projected parole eligibility; and it mandates an extended term of imprisonment without eligibility for parole except under § 16-93-615, which permits consideration of parole eligibility after an inmate reaches regular parole eligibility and age 55. ARK. CODE ANN. § 16-93-615. Mr. Lambert will not reach age 55 while serving his current sentence; therefore, under § 5-4-501(d), he will have to serve 100 percent of his 15-year sentence because he was charged and sentenced as a habitual offender.

Mr. Lambert claims that applying § 501(d) to his sentence violates the *ex post facto* clause because residential burglary was not designated as a "violent felony" under § 5-4-501(d)(2) until 2015—after he committed his prior residential-burglary offenses.

The retroactive application of § 501(d) of the habitual offender statute violates the *ex post facto* clause if it creates "a sufficient risk of increasing the measure of punishment" as compared to the punishment applicable at the time the crime was committed. *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995) (internal quotation omitted)). The issue here, then, is how Arkansas's current habitual-offender statute compares with the statute in effect at the time Mr. Lambert committed his residential-burglary crimes.

It is undisputed that the State is calculating Mr. Lambert's current sentence (and parole eligibility) under the provisions of Arkansas Code § 5-4-501(d) in effect in 2018, at the time he committed the two offenses of residential burglary. There is also no dispute that the State now deems Mr. Lambert's 2005 and 2009 prior residential-burglary convictions as felony-offenses "involving violence" for purposes of the habitual-offender statute. See ARK. CODE ANN. § 5-4-501(d).

Mr. Lambert argues that when he committed residential burglary in 2005 and 2009, the habitual-offender statute included *aggravated* burglary but not *residential* burglary as a violent felony. Mr. Lambert is correct. When he committed residential burglaries in 2005 and 2009, those burglaries were not considered crimes involving violence. Had the Arkansas legislature not amended the list of offenses involving violence in 2015 to include residential burglary, Mr. Lambert would not find himself

ineligible for parole as a result of his 2018 residential burglary convictions. In other words, his contention that the consequences of his 2005 and 2009 crimes was rendered more severe as a result of the 2015 amendment to the habitual-offender statute is true. His observation, while true, misses the mark.

Before Mr. Lambert committed the 2018 residential burglaries, the habitual-offender statute changed. The earlier version of the statute was no longer in effect – and had not been since 2015. The changes in the statute did not "increas[e] the measure of punishment" he received for his earlier offenses; rather, when he committed the 2018 crimes, he exposed himself to the law as it was then in effect – including the 2015 version of the habitual-offender statute.

Because the State correctly applied the habitual-offender statute that was in effect when Mr. Lambert committed the 2018 residential burglaries, his *ex post facto* argument fails as a matter of law. See *United States v. Baca-Valenzuela*, 118 F.3d 1223, 1231 (8th Cir. 1997) ("[s]o long as the actual crime for which a defendant is being sentenced occurred after the effective date of the new statute, there is no ex post facto violation.") (quoting *United States v. Farmer,* 73 F.3d 836, 841 (8th Cir.1996) (quoting *United States v. Allen,* 886 F.2d 143, 146 (8th Cir.1989)), *cert. denied,* 518 U.S. 1028 (1996)).

In his petition, Mr. Lambert claims that his case is akin to that of "Stephen C. Warren, [where] the one hundred percent (100%) law is *not* being applied," raising issues of equal protection. (Doc. No. 1 at p. 8) (emphasis in original) Mr. Lambert's claim is cursory and is based on a mistaken belief that he and Warren are similarly situated. Unlike Mr. Lambert, Warren was charged with residential burglary as a habitual offender

7

under Arkansas Code Annotated 5-4-501(b)(1)(A)(i)(ii)(2)(D) and was sentenced under § 5-4-501*(b)*. (Doc. No. 10-1 at pp. 1, 5) Mr. Lambert is not similarly situated to Warren, and his equal protection argument lacks merit.

### B. Ineffective Assistance of Counsel

Mr. Lambert raises two ineffective-assistance-of-counsel claims. First, he claims that his counsel was ineffective during plea negotiations for misrepresenting parole eligibility on the two residential burglary charges; and second, he claims that his trial counsel was ineffective for failing to object to the trial court's amended sentencing order.

Director Payne contends that Mr. Lambert procedurally defaulted his ineffective-assistance-of-counsel claims by failing to raise them with the state court. There is no question that Mr. Lambert procedurally defaulted any ineffective-assistance claims. The question is whether his default can be excused.

A habeas petitioner's default can be excused in only limited circumstances. The petitioner must show cause for the default and actual prejudice resulting from a violation of federal law; or that a failure to consider the claims would result in a fundamental miscarriage of justice. *Franklin*, 879 F.3d at 313-14 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Under the cause-and-prejudice standard, cause is established when some objective factor, external to the defense, impeded efforts to comply with the state's procedural rule. *Id*. at 313 (citing *Coleman* 501 U.S. at 753).

Bringing a claim without an attorney is not usually deemed cause to excuse procedural default. *Id*. The Supreme Court, however, has carved out a limited exception. See *Martinez*, 566 U.S. at 1. When a state requires claims of ineffective assistance of trial

counsel to be raised in an initial-review collateral proceeding, as Arkansas does, procedural default will not bar a federal habeas court from hearing a *substantial* claim of ineffective-assistance-of-trial-counsel if, in the initial-review proceeding, the petitioner was not represented by counsel or if counsel in that proceeding was ineffective. *Martinez*, 566 U.S. at 17 (emphasis added).

In Arkansas, all ineffective-assistance-of-counsel claims like Mr. Lambert's must be brought in a state post-conviction petition. See ARK. R. CRIM. P. 37. The time has passed for Mr. Lambert to bring a state Rule 37 petition. See ARK. R. CRIM. P. 37.2(c)(i) (allowing defendants 90 days after a plea of guilty to bring a petition under Rule 37). Accordingly, Mr. Lambert must establish cause and prejudice or actual innocence before the Court can address the merits of his ineffective-assistance-of-counsel claims.

The Court cannot excuse Mr. Lambert's procedural default. Even if he had cause for the default because he did not receive a copy of the amended sentencing order and did not realize the change in his parole eligibility until August of 2019,[1] that is, after the time for filing a petition had expired, the Court cannot find prejudice. (Doc. No. 1 at p. 12),

Taking Mr. Lambert's assertion that counsel misinformed him of his parole eligibility as true, he was still not prejudiced. Had Mr. Lambert not pleaded guilty and gone to trial on the charge of simultaneous possession of drugs and firearms, which was *nolle prossed* under the plea agreement, he would have faced a sentence of ten years to

---

[1] In his petition, Mr. Lambert represented that he did not know about the change in his parole eligibility until he received a timecard from the ADC in September of 2019; but in an affidavit attached to his reply, he states he was aware on August 16, 2019 when he received a disapproval for work release.

life as a habitual offender. In the three cases included in Mr. Lambert's negotiated plea, had he not pleaded guilty, he risked imposition of a life sentence plus 220 years. Under these circumstances, the Court cannot conclude that Mr. Lambert was prejudiced by counsel's misinforming him about his parole eligibility.

Mr. Lambert states in his petition that he, "vehemently asserts to this Court that he would not have pleaded guilty to these two residential burglary charges but for the assurance given to him by counsel that he would not be required to serve one hundred percent (100%) of that fifteen (15) year sentence." (Doc. No. 1 at p. 13) This statement does not square with the statements he made at his plea hearing.

At the plea hearing, when questioned by the Court, Mr. Lambert stated that he had not been promised anything by anyone to persuade him to change his plea to guilty to any of the charges. (Doc. No. 9-3 at p. 6) Additionally, he stated that he understood that by changing his plea to guilty, the Court could impose any lawful sentence. (Doc. No. 9-3 at p. 4) In other words, Mr. Lambert stated he was prepared to plead guilty even if the Court imposed a sentence of greater than the 15-year sentence that was part of the plea deal. Given this testimony, Mr. Lambert's assertions that he would not have pleaded guilty but for his counsel's assurance that he would not have to serve the entire 15-year sentence is not believable.

Furthermore, Mr. Lambert was not prejudiced by his counsel's failure to object to the amended sentencing order, because an objection would have lacked merit. Mr. Lambert was clearly charged in the information for Case No. 49CR-18-20 as a habitual offender under § 5-4-501(d). (Doc. No. 9-2 at pp. 1-2) The circuit court's error in

checking the box for § 5-4-501*(b)* instead of *(d)* for the residential burglary charges in the original sentencing order was a clerical error that was properly corrected in the amended order. Nothing said or done at the plea hearing indicated that the State had agreed to drop the habitual-offender enhancement; and counsel's failure to make a meritless objection did not prejudice Mr. Lambert. See *Sittner v. Bowersox*, No. 19-1742, __ F.3d __, 2020 WL 4590128, at 4 (8th Cir. 2020) (citing *Gray v. Bowersox*, 281 F.3d 749, 756 n.3 (8th Cir. 2002)) (failure to raise a meritless objection cannot support a claim of ineffective assistance).

The *Martinez* exception does not apply to Mr. Lambert's defaulted ineffective-assistance claims, because the claims were not raised in a properly filed Rule 37 petition. *Martinez* did not establish a right to have counsel prepare and file a petition in compliance with the applicable rules. *Martinez*, 566 U.S. at 8-9. In fact, *Martinez* is cause to excuse a substantial ineffective-assistance-of-counsel claim only when a State fails to appoint counsel for a prisoner who *effectively initiates* a request for relief in state court or appoints ineffective counsel. Stated another way, the *Martinez* exception is premised on "cause" consisting of "there being no counsel or only ineffective counsel during the state collateral review proceeding." *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (omitting citation and internal quotes).

For petitioners such as Mr. Lambert, who fail to initiate state collateral-review proceedings, the "cause" for the equitable exception ceases to exist. *Martinez*, 566 U.S. at 7-9; *Phillips v. Kelley*, No. 5:16-CV-092-JM-JTK, 2018 WL 6981226, at *3 (E.D. Ark. Dec. 11, 2018), *report and recommendation adopted,* No. 5:16-CV-092-JM-JTK, 2019

11

WL 138165 (E.D. Ark. Jan. 8, 2019); *Travis v. Kelley*, No. 517CV00044SWWJTR, 2017 WL 4295258, at 5, FN15 (E.D. Ark. Sept. 5, 2017), *report and recommendation adopted,* No. 517CV00044SWWJTR, 2017 WL 4295197 (E.D. Ark. Sept. 27, 2017), *appeal dismissed,* No. 17-3471, 2018 WL 2222602 (8th Cir. Apr. 13, 2018), *reh'g denied* (May 16, 2018)

Even if a claim is procedurally barred, this Court can review a habeas claim if the petitioner comes forward with *new* evidence to support a claim of actual innocence. *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015) (citing *Schlup v. Delo,* 513 U.S. 298 (1995)). The United States Supreme Court describes "new reliable evidence," as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324.

Mr. Lambert has not come forward with new, reliable, scientific evidence of his innocence to excuse his procedural default.

**IV.** **Certificate of Appealability:**

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Lambert has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c) (1)-(2). In this case, Mr. Lambert has not provided a basis for the Court to issue a certificate of appealability. Accordingly, a certificate of appealability should be denied.

## V. **Conclusion:**

Mr. Lambert's *ex post facto* and equal protection claims lack merit; and he has not established either cause and prejudice or actual innocence to excuse the procedural default of his ineffective-assistance-of-counsel claims. The Court recommends that Mr. Lambert's petition for writ of habeas corpus (Doc. No. 1) be DISMISSED, with prejudice.

DATED this 19th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE